## Hendricks-Caskey Company v. Franklin Lumber Company.

*A. R. & N. F. Osmer*, for plaintiff; *G. G. Martin*, for defendant.

PARKER, P. J., April 9, 1928.—This is an action in *assumpsit* brought by the plaintiff against the defendant to recover the sum of $465.19 for the alleged breach of a contract between plaintiff and defendant for the sale and purchase of a quantity of Douglas fir lumber. The case was submitted to the jury, and a verdict was found in favor of the plaintiff for $219.34. Motions were filed by the defendant, both for judgment *n. o. v.* and for a new trial.

The sole question with which we are concerned arises under the 4th section of the Uniform Sales Act of May 19, 1915, P. L. 543. At the trial, it appeared that L. W. Crane, a salesman and agent of the Hendricks-Caskey Company of Buffalo, N. Y., a corporation, met Edgar Thorp, president of the defendant company, at Franklin on June 2, 1926, when a verbal contract was made between the Hendricks-Caskey Company and the Franklin Lumber Company

for the sale of a quantity of Douglas fir lumber. After the arrangement had been made, L. W. Crane made a sale memorandum in duplicate, giving one copy to Mr. Thorp, as president of the defendant company, and retaining one copy himself. This memorandum was produced and offered in evidence, and is as follows:

Hendricks-Caskey Co., Marine Bldg., Buffalo, N. Y.

Prices F. O. B. Franklin, Pa. June 2, 1926.

Ship to—Franklin Lbr. Co. At Franklin, Pa. Delivering Road N. Y. C. When—June Boat.

Terms—Freight net cash, balance note on receipt of shipment at 60 days from date of arrival, or 1½ per cent discount for cash settlement within 5 days from date of arrival. Orders taken subject to prior sale, also strikes, accidents or other causes beyond our control.

No. 1 Douglas Fir. S 4 S ¼ scant. Via Boat. 10% No. 2 allowed.

| 150 pcs. | 2 x 10 - 12' | $38.00 | 200 pcs. | 2 x 4 | - 12' | $38.00 |
| 500 " | 2 x 10 - 16' | 38.00 | 200 " | 2 x 4 | - 14' | 38.00 |
| 100 " | 2 x 10 - 20' | 38.00 | 200 " | 2 x 4 | - 16' | 38.00 |
| 150 " | 2 x 10 - 18' | 38.00 | 200 " | 2 x 4 | - 18' | 38.00 |

Sold on 25½c rate any reduction in rate from Balti. for buyers account.

L. W. CRANE.

On July 19, 1926, the defendant company wrote the plaintiff the following letter:

Franklin Lumber Company, Building Material,

Hendricks-Caskey Co.,                       Franklin, Pa. 7/19/26.

Marine Trust Bldg.,

Buffalo, N. Y.

Gentlemen: We have never received invoice for our Order given you June 2nd, 1926, for a car fir dimension.

This morning the N. Y. C. advise us at Franklin, Pa., that they have a 22c rate going into effect August 1st on lumber arriving by boat at Balto, M. D. via P. R. R. and N. Y. C. delivery Franklin, Pa.

As this order was taken on 25½c rate if the stock arrives at Balto on or after August 1st, we can get the advantage of this rate if routed from Balto. that route.

Advise about when this boat will arrive with this stock.

Yours very truly,

FRANKLIN LUMBER CO. (T)

Parol evidence was received to show the circumstances attending the transaction and the connection between the order and the letter. As part of this parol testimony, Mr. Thorp, the president of the defendant company, was called as a witness for the plaintiff as on cross-examination. He testified that, as president and general manager of the defendant company, he met Mr. Crane, the agent of the plaintiff company, on June 2, 1926, and gave him an order for the lumber, and on the terms set forth in the statement of claim and written memorandum which was signed by Crane; that at this same meeting, Mr. Crane then made out the written memorandum which embodied their entire agreement and delivered a copy to the witness. From this testimony, it appears that this was the only business transacted at that meeting.

On the trial, the court admitted in evidence the memorandum of June 2, 1926, and the letter of July 19, 1926, over the objection of counsel for the defendant. Counsel for defendant contended, and now maintains, that this did not constitute a sufficient memorandum in writing to satisfy the conditions of section 4 of the Sales Act. At the argument of the pending motion, the specific position of counsel for the defendant was based upon a contention that the letter of July 19th did not contain any intrinsic reference to the memorandum of June 2nd; that if it contained any reference to any other matter, it was to the oral contract of June 2nd and not to the written memorandum.

The portion of the Sales Act with which we are concerned is as follows: "A contract to sell or a sale of any goods or choses in action of the value of $500 or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

We are only concerned with the question as to whether or not the memorandum of June 2nd and the letter of July 19th constituted a sufficient note or memorandum in writing to come within the exception in the statute. At the outset, it will be observed that the effect of the statute is not to determine what shall constitute a valid contract, but, on the contrary, to require certain formalities in order that the contract may be enforceable in court. This is expressed in 1 Williston on Contracts, 1114, and quoted with approval by Mr. Justice Sadler in Franklin Sugar Co. v. John, 279 Pa. 104, 109, as follows: "As the purpose of the statute is to require a formality of proof in order to make a contract enforceable, not to impose a new rule of law as to what constitutes a valid contract, it is immaterial with what purpose or in what way, so long as it is signed, the requirement of the statute is fulfilled."

The memorandum required by the statute may be on different papers if one contains reference to the other. The subject-matter of the contract may appear from the writing, but it may be expressed in general terms, and parol evidence is admissible to identify it.

"It is to be noted that the Act of 1855, supra, does not require that the whole agreement upon which the action is brought shall be reduced to writing, but merely that 'some memorandum or note thereof shall be in writing.' After giving the general rule that oral evidence cannot ordinarily be accepted to supply deficiencies in the writing sued upon, 20 Cyc., 318, states: 'However, this rule does not prevent the admission of oral evidence to show the circumstances under which the contract was made . . . or to show to what subject-matter . . . it applies, . . . and separate writings may be connected by oral evidence, provided they contain certain internal reference to each other.' Reed on the Statute of Frauds, Vol. 1, Sec. 341 (also, see section 351), says: 'The memorandum required by the statute of frauds may be on different papers, one of which must contain reference to the other.' Brandt on Suretyship and Guaranty (3rd ed.), Vol. 1, page 195, states: 'The subject-matter of the contract must appear from the writing, but it may be expressed in general terms, and parol evidence is admissible to identify it.' See, also, Browne on the Statute of Frauds (5th ed.), §§ 345, 346, 348, which states the rule as already given from the other text-books, and Beckwith v. Talbot, 95 U. S. 289, 292. We have numerous cases in Pennsylvania bearing either directly or by analogy upon the subject before us:" Title G. & S. Co. v. Lippincott, 252 Pa. 112, 117.

"A memorandum need not be contained in one writing; any number may be taken together to make out the necessary written expression of the terms of the bargain, provided there is sufficient connection made out between the papers, without the aid of parol evidence further than to identify papers to which reference is made. This connection may be established either by the physical attachment of the different papers at the time of signature or by reference:" 1 Williston on Sales, § 107.

"It is true that the statute may be satisfied where the memorandum is made up of several papers which together will furnish the essential terms;

but the separate writings must bear internal reference one to the other. In such case, oral testimony may be offered to identify and show the connection between them, but such evidence cannot be used to supply proof of the terms of the contract itself:" M. L. & H. Co. *v.* Lamp, 269 Pa. 517, 520.

These principles are admitted in the defendant's brief, but it is contended that they are not applicable for two reasons: (1) We will here quote the language of the brief: "To recover, the plaintiff must prove its contract, and to do so must, as it did on the trial, resort to parol to establish its terms, thus reducing the whole agreement to a parol contract. 'He pulls down the house on his own head.' When he converts the writing into an oral agreement, the statute declares it to be void;" (2) even though there may be an intrinsic reference in the second writing to an order of June 2nd, it is not to the memorandum, but might be applicable either to the oral contract or the written memorandum.

Taking up the first contention, we believe that it is founded on a false premise. A contract of sale involving more than $500 is not unenforceable by action because it is a parol contract, but because there is not a written memorandum of that contract or one embodying the substance of the contract. We believe the law is well settled that a parol contract may be enforced with the aid of a written memorandum. It is true that a written contract is enforceable, but likewise is a parol contract enforceable when accompanied by a written memorandum signed by the party to be charged, or his agent in that behalf. The difficulty arises from a confusion of the terms "parol evidence" and "parol contract." It will be noted that the memorandum may be signed by only one of the parties, and if the party to be charged has signed that memorandum, it is enforceable, and yet might not be enforceable against the other party.

"The difference between a contract in writing and a memorandum of a parol contract is important. Thus, a note or memorandum may be made at any time prior to the beginning of the action, and, as will appear from subsequent discussion, need not be made with the intent of making a memorandum. The parol evidence rule also affects differently a contract in writing from a memorandum in writing:" 1 Williston on Sales, § 100.

It is true that in a number of cases the court speaks of the whole matter being in parol when an essential element is in parol, but it is there speaking of the evidence of the contract which may still be or not be a parol contract.

Taking up the second reason advanced in support of the motion, we have a more serious question, and one that has been much debated by the courts. The position of the defendant is best stated in 1 Williston on Sales, § 110: "Recent English cases have adopted a doctrine going quite as far as the doctrine criticised in the preceding section. Where a signed document refers to the transaction in question, an unsigned memorandum describing the transaction has been treated as incorporated therewith. One or two dissimilar decisions have been made in the United States. Such decisions go beyond what seems permissible, for the signature of the party to be charged does not authenticate an unsigned memorandum of the purchase *merely because the signed paper makes some reference to the purchase.* The signature vouches for the fact that there was a purchase, but it does not vouch for the terms of the purchase as described in the unsigned paper."

An examination of the cases referred to in this paragraph shows that they do not satisfactorily sustain the position of the learned author, for in a majority of the cases sustaining his position the specific question has not been raised. The language of the opinions is broad enough to sustain the

general principle involved, but does not indicate that the decision has been rendered with the particular question in mind as to whether the signed memorandum refers to the purchase or to the memorandum. The author refers for support, among other cases, to that of Llewellyn *v.* Sunnyside Coal Co., 242 Pa. 517. In that case Mr. Justice Stewart specifically calls attention to the fact that there is not any intrinsic evidence of any kind in the signed paper connecting it with the unsigned paper. This, of course, is an essential element. And, in addition, the decision in that case is based upon another provision of the statute of frauds involving the sale of land, and discloses that the authority of an agent pretending to act for the owner was not in writing. What is said in that case must be taken in connection with the specific matter that was before the court. We have made a careful examination of that case, and do not see anything in it to support defendant's contention. On the other hand, the English cases and one or two American cases sustain the contention of plaintiff.

In Long *v.* Millar, 4 C. P. D. 450, the defendant signed the following receipt: "Received of Mr. George Long the sum of Thirty-one pounds as a deposit on the purchase of three plots of land at Hammersmith. £31 0 0. Charles W. Millar."

The plaintiff was allowed to treat as incorporated in this receipt a memorandum of the purchase which had been signed by him on the same day, and which contained the full terms of the bargain. The receipt did not refer to a document, but to a transaction. This case went further than the Pennsylvania cases, for there was not any intrinsic reference to the former transaction by which it could be identified.

We also refer to the cases of Smith *v.* Colby, 136 Mass. 562, and Beckwith *v.* Talbot, 95 U. S. 289, and decisions in Kentucky and Kansas. The strongest case that we have found supporting the contention of defendant is that of Wagner *v.* Holland, 192 N. W. Repr. 552, where a signed letter referring to "our order" was held not to incorporate a written confirmation, signed by the plaintiff, of the defendant's oral order.

An examination of our own decisions and those of other courts leads us to the conclusion that the question was an open one for this court until the decision in Weinreth *v.* Mill End Clothing Co., 84 Pa. Superior Ct. 107. We are unable to distinguish that case in any respect from the one in hand, except that in the instant case the intrinsic evidence of reference in the signed memorandum to the unsigned memorandum is more specific than in the Superior Court case. In that case it appeared that on June 21, 1921, an order for 200 dozen boys' knee pants was given by plaintiff to defendant, who reduced it to writing and gave a carbon copy thereof to plaintiff. That memorandum was not signed by either party. On June 27, 1921, defendant wrote plaintiff a letter, stating, *inter alia,* "We received your order given our Mr. Simon, and wish to thank you very much for same. This merchandise is now being cut specially for your order and will be shipped as per the instructions given." On Aug. 8th, plaintiff wrote defendant as follows: "Regarding my order placed with you on June 21st; delivery September 1st and October 1st, if these goods are ready you may ship same immediately, provided you will date bill in accordance with your order." Defendant replied on Aug. 15th: "Your letter of the 8th instant to hand and contents carefully noted. In reply to same, wish to state that we will not be able to make any shipment on your order before September 15th to October 1st. Kindly let us know if same is satisfactory."

In that case the purchaser sued the seller, the defendant, for failure to comply with the contract. The main contention of the defendant was that it violated the 4th section of the Sales Act. The Superior Court replied to this contention as follows: "The original memorandum of sale was not signed by defendant or his agent. Defendant's letter of June 27th does not identify the order of June 1st as the one which it confirms. But parol evidence was admissible to show the circumstances attending the transaction and the connection between the order and the letter: Title G. & S. Co. *v.* Lippincott, 252 Pa. 112. It is conceded that the parties had no dealings until June 21, 1921; that that was the only transaction between them prior to June 27th, and that the letter of June 27, 1921, could refer only to the order of June 21st. Under the circumstances, we cannot say that the letter did not contain sufficient reference to the order to connect them and justify the admission of both. It is unnecessary to decide this question solely upon the order and letter referred to. Defendant's letter of Aug. 15th, written in answer to plaintiff's letter of Aug. 8th, speaking of an order of June 21st, refers to the order of June 21st. We are clear that the order and these two letters constituted a memorandum in writing signed by defendant, which is sufficient to meet the requirements of the statute. The only essential element of the contract which was wanting in the original sales memorandum was the signature of defendant or his agent. This is supplied by the two letters. It has been held in many cases that the memorandum may consist of more than one document. See Title G. & S. Co. *v.* Lippincott, *supra.* It is only necessary that there exist such clear evidence on the face of the papers of a connection between them as to give them the effect of one document: Lippincott *v.* Stringer, 80 Pa. Superior Ct. 162."

In the instant case, the memorandum which was not signed by the party to be charged set forth in detail the contract, and there is not any contention that this memorandum, if admissible, did not show a valid contract. Among other things, it contained the following:

Delivery Road—N. Y. C. When—June Boat. No. 1 Douglas Fir. Sold on 25½c rate. Any reduction in rate from Balti. for buyers account.

This was identified in the signed memorandum of July 19th, as follows:

We have never received invoice for our order given you June 2nd, 1926, for a car fir dimension.

This morning the N. Y. C. advise us that they have a 22c rate going into effect August 1st on lumber arriving by boat at Balto. M. D. via P. R. R. and N. Y. C. delivery Franklin, Pa. As this order was taken on 25½c rate, if the stock arrives at Balto. on or after August 1st, we can get the advantage of this rate if routed from Balto that route.

Advise about when this boat will arrive with this stock.

It will be noted that this signed memorandum refers to the defendant's order of June 2, 1926, for fir, that the rate is going to be changed when there is New York Central delivery, that the order was taken on a 25½-cent rate, that it is expected on a boat, and the defendant will be entitled to the advantage of reduced rate. This is a much more explicit intrinsic reference than that contained in the case of Weinroth *v.* Mill End Cloth Co., *supra.* In addition to this, it was testified for the purpose only of showing the attending circumstances and the connection between the two writings, that Crane had made the sale to defendant on June 2nd, that he had made out a written copy of the contract in exact accord with the parol understanding, that the letter of July 19th referred to the agreement made that date, and although Mr. Thorp, the sole representative and president of the defendant company, admitted such facts, it was not suggested that there was any other order to which the

written confirmation could be applied. We are bound by the decision of the Superior Court, for the instant case and the one referred to are not distinguishable.

## Motion for a new trial.

No reasons have been filed in support of the motion for a new trial, but in the typewritten brief submitted to the court there is one paragraph as follows:

"But even were it otherwise, and if it could be said that the letter of July 19th refers to the writing of June 2nd and not to the parol contract of that date, is that not a question for a jury to find, and not a question to be declared by the court as a matter of law?"

We will consider this as the reason assigned in support of the motion we are now considering.

The fifth paragraph of the statement of claim, which was not denied by the defendant, set up: "That the defendant, on or about the 2nd day of June, 1926, at Franklin, Pa., ordered from the plaintiff by verbal order given by it to one L. W. Crane, an agent and salesman of said plaintiff, a certain quantity of No. 1 fir lumber as then and there set forth, and at the price and upon the conditions and terms, also then and there set forth in a memorandum of said order then and there made by said L. W. Crane, of which memorandum a true and correct copy was then and there delivered to said defendant, and of which the following is a true copy." There then follows the memorandum of June 2, 1926, referred to at the beginning of this opinion. This was not denied in the affidavit of defense, was offered in evidence, and is, therefore, to be taken as admitted.

The president and general manager of the defendant company was called on cross-examination, and testified that he had the entire dealings on behalf of the defendant with the plaintiff about the subject-matter of this suit; that he wrote the letter himself dated July 19th, and that the original which was produceed by plaintiff was signed and mailed by him. The only matter discussed between the parties, and as to which they dealt, was the subject-matter of this controversy and that described in the memorandum of June 2nd. He admitted that he received the written memorandum, and that it correctly represented their understanding. There was, therefore, not any matter in dispute between plaintiff and defendant as to the circumstances surrounding the making of the memorandum on June 2nd, or the sending of the letter of July 19th. In addition to this, the president of defendant company specifically admitted that when he wrote the letter of July 19th, he referred to the transaction of June 2nd. There was, therefore, not any possible question to submit to the jury with reference to the execution and delivery of these papers, and all of the circumstances surrounding same, as claimed by the plaintiff, were admitted by the defendant. Therefore, there was not any fact in dispute, and we are not unmindful of the fact that, even where the testimony of a plaintiff is undisputed, it is still for the jury to pass upon the credibility of plaintiff's witnesses; but that is not the present case. Here, all the facts were admitted by the only person that was in a position to speak for the defendant or knew anything of the controversy. Therefore,

Now, April 9, 1928, the motions of the defendant for judgment n. o. v. and for a new trial are refused, and the rules to show cause issued thereon are discharged, and judgment may be entered for the plaintiff on the verdict upon compliance with the court rules.

From George S. Criswell, Jr., Franklin, Pa.